In the Matter of the Estate of James T. Swift, Deceased.

The tax imposed by the Collateral Inheritance Tax Act (Chap. 483, Laws of 1885, as amended by Chap. 713, Laws of 1887) is not a property tax but a tax on the right of succession under a will or devolution in case of intestacy (Gray, J., dissenting).

Personal property of a resident decedent out of the state is subject to appraisal for the purpose of taxation under the said act (Gray, J., dissenting).

Real property of the decedent situated out of this state is not subject to such appraisal and the doctrine of equitable conversion cannot be invoked to subject it thereto.

* 136 N. Y. 621.

Accordingly *held,* where the estate of a decedent who was a resident of this state included real estate and chattels in another state, and where under a power of sale given by his will to the executors for the purpose of paying legacies and making distribution, said property was sold and converted into money, that the real property without the state was not subject to appraisal and tax under said act, but that the personalty was (GRAY, J., dissenting).

Also *held,* that although a clause in the will of the decedent directed that the amount of the tax upon legacies and devises should be paid as expenses of administration, no deduction should be made from the value of the residuary estate of the amount of the tax to be assessed upon its value or upon the prior legacies, that for the purpose of the tax the value of the interest passing to a legatee was to be reported by the appraiser, without any deduction for any purpose or under any testamentary direction.

(Argued November 28, 1892; decided January 24, 1893.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made June 3, 1892, which affirmed an order of the Surrogate's Court of the city and county of New York, which affirmed an order assessing the value of the property of James T. Swift, deceased, which affirmed an order assessing the value of the property of said decedent subject to taxation under the Collateral Inheritance Tax Act.

The facts, so far as material, are stated in the opinion.

*S. W. Rosendale* for appellants. The statute known as the Collateral Inheritance Tax Law does not impose a property tax, but a charge for the privilege of acquiring property. (*In re McPherson,* 104 N. Y. 316, 317; Laws of 1885, chap. 483; Laws of 1887, chap. 713; *Schofield* v. *City of Lynchburgh,* 78 Va. 366; *Strode* v. *Commonwealth,* 52 Penn. 181; *Scholey* v. *Rew,* 23 Wall. 331, 346; *State* v. *Dalrymple,* 70 Md. 294; *Pullen* v. *Comrs.,* 66 N. C. 361, 363; *Peters* v. *City of Lynchburgh,* 76 Va. 927; *In re Howe,* 112 N. Y. 103; *In re Sherwell,* 125 id. 379; *People* v. *H. Ins. Co.,* 92 id. 328.) Under the will of decedent, the residuary legatees did not take an interest in real estate, but only in personal property. (Willard on Real Estate, 505–511, 523; *Meyers* v. *Eddy,* 47 Barb.

263, 273; *Woolsey* v. *Shaw*, 100 N. Y. 191, 196; *Dodge* v. *Pond*, 23 id. 69; *Fisher* v. *Banta*, 66 id. 468; *Lent* v. *Howard*, 89 id. 169; *Kane* v. *Gott*, 24 Wend. 641; *Underwood* v. *Curtis*, 127 N. Y. 523; *Roberts* v. *Corning*, 89 id. 225, 239; *Greenleaf* v. *Waddell*, 116 id. 234; *Power* v. *Cassidy*, 79 id. 602; *Miller* v. *Comm.*, 111 Penn. St. 321.) The personal property of decedent in New Jersey was subject to the Collateral Inheritance Law. (*In re Romaine*, 127 N. Y. 80; *In re Enston*, 113 id. 133; *Orcutt's Appeal*, 97 Penn. St. 179.) The specific articles bequeathed under the provisions of the note or memorandum mentioned in the fourth clause of the will should have been subjected to the tax as against the persons not exempted. (*In re Howe*, 112 N. Y. 100; *In re Sherwell*, 125 id. 376.) The claim of the executors that chapter 483 of the Laws of 1885, as amended by chapter 713 of the Laws of 1887, has been repealed by chapter 215 of the Laws of 1891, is entirely without force. (Laws of 1887, chap. 713, § 4.)

*Nelson S. Spencer* for respondents. As the tax is one which is payable out of the property, neither the real estate nor its proceeds are taxable by the state of New York. (*In re Vassar*, 127 N. Y. 1.) No state, by any law or procedure, can tax property or persons out of its jurisdiction. (*Lorillard* v. *People*, 6 Dem. 268; *Drayton's Appeal*, 61 Penn. St. 172; *Parker* v. *Linden*, 113 N. Y. 28; *Greenland* v. *Waddell*, 116 id. 234.) The tax is either upon the property or upon the person. The devolution determines what property is taxed, and when it is taxed. But there can be no tax on a mere privilege such as this, unless the privilege is itself property and has a market value as a franchise. No such tax would be enforceable except out of some property or some person. (*In re Howard*, 5 Dem. 483.) The tax levied by the state of New York is one on property, and not on any person or persons. (*In re McPherson*, 104 N. Y. 306; *In re Stewart*, 131 id. 274; *In re Romaine*, 127 id. 80; *In re Vassar*, Id. 1; *McVean* v. *Sheldon*, 48 Hun, 163.) But it is sought to tax

the proceeds of the sale of the property upon the ground that
the direction to the executors to sell contained in the will
worked a conversion of the realty into personalty at the time
of the testator's death, and, therefore, it will be regarded as
attending the testator and having its status at his domicile.
This ground is untenable. (*Parker* v. *Linden*, 113 N. Y.
28; *In re Bingham*, 127 id. 296; *Hoyt* v. *Comrs.*, *etc.*, 23
id. 224; *Miller Case*, 111 Penn. St. 321.) Real property
in New Jersey has no protection from the state of New
York. But that is the theoretical ground upon which the
tax is laid. (*Romaine Case*, 127 N. Y. 80, 89; *People ex rel.*
v. *Smith*, 88 id. 376; *In re Stewart*, 131 id. 274.) The
personal property in question was tangible property situated
on the real estate in New Jersey. It also was without the
jurisdiction of the state of New York, and not taxable.
(*Romaine Case*, 127 N. Y. 80; *People ex rel.* v. *Smith*, 88
id. 576; *Johnston* v. *Spicer*, 107 id. 185.) Upon the hearing
at General Term the attorney-general argued the question
involved in the decision of the surrogate that the personal
property of the value of $500 bequeathed by a memorandum
was taxable in the aggregate. No objection to this decision
was made by the comptroller, and the question is not before
the court. (*In re Stewart*, 131 N. Y. 274; *In re Farley*, 15
N. Y. S. R. 727.)

GRAY, J. James T. Swift died in July, 1890; being a
resident of this state and leaving a will, by which he made a
disposition of all his property among relatives. After many
legacies of money and of various articles of personal property,
he directed a division of his residuary estate into four portions,
and he devised and bequeathed one portion to each of four
persons named. The executors were given a power of sale
for the purpose of paying the legacies and of making the dis-
tribution of the estate. At the time of his death, the testator's
estate included certain real estate and tangible personal prop-
erty in chattels, situated within the state of New Jersey, which
were realized upon by the executors and converted into moneys

in hand.    When, upon their application, an appraisement was
had of the estate, in order to fix its value under the require-
ments of the law taxing gifts, legacies and inheritances, the
surrogate of the county of New York, before whom the mat-
ter came, held, with respect to the appraisement, that the real
and personal property situated without the state of New York
were not subject to appraisal and tax under the law, and the
exceptions taken by the comptroller of the city of New York
to that determination raise the first and the principal ques-
tion which we shall consider.

Surrogate RANSOM's opinion, which is before us in the record,
contains a careful review of the legal principles which limit the
right to impose the tax, and his conclusions are as satisfactory
to my mind, as they evidently were to the minds of the learned
justices of the General Term of the Supreme Court, who
agreed in affirming the surrogate's decree upon his opinion.

The attorney-general has argued that this law, commonly
called the collateral inheritance tax law, imposes not a property
tax but a charge for the privilege of acquiring property, and,
as I apprehend it, the point of his argument is that, as there is
no absolute right to succeed to property, the state has a right
to annex a condition to the permission to take by will, or by
the intestate laws, in the form of a tax, to be paid by the
persons for whose benefit the remedial legislation has been
enacted.    That is, substantially, the way in which he puts the
proposition, and if the premise be true that the tax imposed
is upon the privilege to acquire, and, as he says in his brief, is
like "a duty imposed, payable by the beneficiary," possibly
enough, we should have to agree with him.    We might think,
in that view of the act, that the *situs* of property in a foreign
jurisdiction was not a controlling circumstance.    But if we
take up the provisions of the law by which the tax is imposed,
and if we consider them as they are framed and the principle
which then seems to underlie the peculiar system of taxation
created, I do not think that his essential proposition finds
adequate support.    The law in force at the time of the decease
of the testator is contained in chapter 713 of the Laws of 1887,

amending chapter 483 of the Laws of 1885, and is entitled "An act to tax gifts, legacies and collateral inheritances in certain cases."

By the first section it is provided that "*all property* which shall pass by will   *   *   *   from any person who may die seized or possessed of the same, while a resident of this state, or, if such decedent was not a resident of this state at the time of his death, which property or any part thereof shall be within this state,   *   *   *   *shall be and is subject to a tax*   *   *   * to be paid   *   *   *   for the use of the state," etc.

In the fourth section it is provided that "all taxes imposed by this act, unless otherwise herein provided for, shall be due and payable at the death of the decedent," etc.

By the sixth section, it is provided that the executor shall "deduct the tax from the legacy or property, *subject to said tax*, or if the legacy or property be not money, he shall collect *the tax thereon* upon the appraised value thereof from the legatee, or person entitled to such property, and he shall not deliver, or be compelled to deliver, any specific legacy or property *subject to tax* to any person until he shall have collected *the tax thereon*," etc. The language of the act has been justly condemned, for being involved and difficult to read clearly ; but considering the language employed in these and in other sections of the law, in its ordinary sense, I think we would at once say that if the legislature had not actually imposed a tax upon the property itself, upon the death of its owner, it had certainly intended to impose a tax upon its succession, which was to be a charge upon the property, and which operated, in effect, to diminish *pro tanto* its value, or the capital, coming to the new owner under a will, or by the intestate laws. Could any one say, after reading the provisions of this law, that it was the legatee, or person entitled, who was taxed? I doubt it. Property, which was the decedent's at the time of his death, is subjected to the payment of a tax. The tax is to be deducted from the legacy ; or, when deduction is not possible from the legacy not being in money, and a collection from the legatee or the person entitled to the

property is authorized to be made, the tax so to be collected is described as " *the tax thereon*," that is, on the property.

If it should be said that such an interpretation of the law is in conflict with the doctrine which some judges have asserted, respecting the nature of this tax, I think it might be sufficient to say that the phraseology of the New York law differs, more or less, from that of other states, and seems peculiarly to charge the subject of the succession with the payment of the tax.    But I do not think it at all important to our decision here that we should hold it to be a tax upon property precisely.

A precise definition of the nature of this tax is not essential, if it is susceptible of exact definition.    Thus far, in this court, we have not thought it necessary, in the cases coming before us, to determine whether the object of taxation is the property which passes, or not; though, in some, expressions may be found which seem to regard the tax in that light.    (*Matter of McPherson*, 104 N. Y. 306 ; *Matter of Enston*, 113 id. 174 ; *Matter of Sherwell*, 125 id. 379 ; *Matter of Romaine*, 127 id. 80, and *Matter of Stewart*, 131 id. 274.)    The idea of this succession tax, as we may conveniently term it, is more or less compound ; the principal idea being the subjection of property, ownership of which has ceased by reason of the death of its owner, to a diminution, by the state reserving to itself a portion of its amount, if in money, or of its appraised value, if in other forms of property.    The accompanying, or the correlative idea should necessarily be that the property, over which such dominion is thus exercised, shall be within the territorial limits of the state at its owner's death, and, therefore, subject to the operation and the regulation of its laws.    The state, in exercising its power to subject realty, or tangible property, to the operation of a tax, must, by every rule, be limited to property within its territorial confines.

The question here does not relate to the power of the state to tax its residents with respect to the ownership of property situated elsewhere.    That question is not involved.    The question is whether the legislature of the state, in creating

this system of taxation of inheritances, or testamentary gifts, has not fixed as the standard of right the property passing by will, or by the intestate laws.

What has the state done, in effect, by the enactment of this tax law? It reaches out and appropriates for its use a portion of the property at the moment of its owner's decease; allowing only the balance to pass in the way directed by testator, or permitted by its intestate law, and while, in so doing, it is exercising an inherent and sovereign right, it seems very clear to my mind that it affects only property which lies within it, and, consequently, is subject to its right of eminent domain. The theory of sovereignty, which invests the state with the right and the power to permit and to regulate the succession to property upon its owner's decease, rests upon the fact of an actual dominion over that property. In exercising such a power of taxation, as is here in question, the principle, obviously, is that all property in the state is tributary for such a purpose and the sovereign power takes a portion, or percentage, of the property, not because the legatee is subject to its laws and to the tax, but because the state has a superior right, or ownership, by force of which it can intercept the property, upon its owner's death, in its passage into an ownership regulated by the enabling legislation of the state.

The rules of taxation have become pretty well settled, and it is fundamental among them that there shall be jurisdiction over the subject taxed; or, as it has been sometimes expressed, the taxing power of the state is coextensive with its sovereignty. It has not the power to tax directly either lands or tangible personal property situated in another state or country. As to the latter description of property no fiction transmuting its *situs* to the domicile of the owner is available, when the question is one of taxation. In this connection the observations of Chief Judge Comstock, in *Hoyt* v. *Commissioners of Taxes* (23 N. Y. 224), and of some text writers, are not inappropriately referred to. He had said that lands and personal property having an actual situation within the state are taxable, and, by a necessary implication, that no other property

can be taxed.   He says, further, "If we say that taxation is on the person in respect to the property, we are still without a reason for assessing the owner resident here in respect to one part of his estate situated elsewhere and not in respect to another part.    Both are the subjects of taxation in the foreign jurisdiction."

In Judge COOLEY's work on Taxation it is remarked (p. 159) that "a state can no more subject to its power a single person, or a single article of property, whose residence or *situs* is in another state, than it can subject all the citizens, or all the property of such other state to its power."

Judge COOLEY had reference in his remarks to the case of bonds of a railroad; for he cites the case of "the state tax on foreign held bonds" in the United States Supreme Court (15 Wallace, 300), where Mr. Justice FIELD delivered the opinion and, in the course of it, observed that "the power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state."

Judge STORY, in his work on the Conflict of Laws, speaking of the subject of jurisdiction in regard to property, said (section 550) that the legal fiction as to the *situs* of movables yields when it is necessary for the purpose of justice, and, further, "a nation within whose territory any personal property is actually situated has an entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situated there."

The proposition which suggests itself from reasoning, as from authority, is that the basis of the power to tax is the fact of an actual dominion over the subject of taxation at the time the tax is to be imposed.

The effect of this special tax is to take from the property a portion, or a percentage of it, for the use of the state, and I think it quite immaterial whether the tax can be precisely classified with a taxation of property or not.   It is not a tax upon persons.   If it is called a tax upon the succession to the ownership of property; still it relates to and subjects the prop-

erty itself and when that is without the jurisdiction of the state, inasmuch as the succession is not of property within the dominion of the state, succession to it cannot be said to occur by permission of the state. As to lands this is clearly the case, and rights in or power over them are derived from or through the laws of the foreign state or country. As to goods and chattels it is true; for their transmission abroad is subject to the permission of and regulated by the laws of the state or country where actually situated. Jurisdiction over them belongs to the courts of that state or country for all purposes· of policy, or of administration in the interests of its citizens, or of those having enforceable rights, and their surrender, or transmission, is upon principles of comity.

When succession to the ownership of property is by the permission of the state, then the permission can relate only to property over which the state has dominion and as to which it grants the privilege or permission.

Nor is the argument available that, by the power of sale conferred upon the executors, there was an equitable conversion worked of the lands in New Jersey, as of the time of the testator's death, and, hence, that the property sought to be reached by the tax, in the eye of the law, existed as cash in this state in the executor's hands, at the moment of the testator's death. There might be some doubt whether the main proposition in the argument is quite correct and whether the land did not vest in the residuary legatees, subject to the execution of the power of sale. But it is not necessary to decide that question. Neither the doctrine of equitable conversion of lands, nor any fiction of *situs* of movables can have any bearing upon the question under advisement. The question of the jurisdiction of the state to tax is one of fact and cannot turn upon theories or fictions; which, as it has been observed, have no place in a well adjusted system of taxation.

We can arrive at no other conclusion, in my opinion, than that the tax provided for in this law is only enforceable as to property which, at the time of its owner's death, was within the territorial limits of this state. As a law

imposing a special tax, it is to be strictly construed against the state and a case must be clearly made out for its application. We should incline against a construction which might lead to double taxation; a result possible and probable under a different view of this law. If the property in the foreign jurisdiction was in land, or in goods and chattels, when, upon the testator's death, a new title, or ownership, attached to it, the bringing into this state of its cash proceeds, subsequently, no matter by what authority of will, or of statute, did not subject it to the tax. A different view would be against every sound consideration of what constitutes the basis for such taxation, and would not accord with an understanding of the intention of the legislature, as more or less plainly expressed in these acts.

Another question, which I shall merely advert to in conclusion, arises upon a ruling of the surrogate with respect to appraisement, in connection with a clause of the will directing that the amount of the tax upon the legacies and devises should be paid as an expense of administration. The appraiser, in ascertaining the value of the residuary estate for the purpose of taxation, deducted the amount of the tax to be assessed on prior legacies. The surrogate overruled him in this, and held that there should be no deduction from the value of the residuary estate of the amount of the tax to be assessed, either upon prior legacies, or upon its value. He held that the legacies taxable should be reported, irrespective of the provision of the will; and that a mode of payment of the succession tax prescribed by will is something with which the statute is not concerned. I am satisfied with his reasoning and can add nothing to its force. Manifestly, under the law that which is to be reported by the appraiser for the purpose of the tax is the value of the interest passing to the legatee under the will, without any deduction for any purpose, or under any testamentary direction.

A question is raised as to the effect upon the law, as contained in the acts of 1885 and 1887, of the passage of chapter 215 of the Laws of 1891; but as that has been the subject of

another appeal and is fully discussed in the opinion in the *Matter of the Estate of Prime*,* no reference will be made to it here.

My brethren are of the opinion that the tax imposed under the act is a tax on the right of succession, under a will, or by devolution in case of intestacy ; a view of the law which my consideration of the question precludes my assenting to.

They concur in my opinion so far as it relates to the imposition of a tax upon real estate situated out of this state, although owned by a decedent, residing here at the time of his decease ; holding with me that taxation of such was not intended, and that the doctrine of equitable conversion is not applicable to subject it to taxation. But as to the personal property of a resident decedent, wheresoever situated, whether within or without the state, they are of the opinion that it is subject to the tax imposed by the act.

The judgment below, therefore, should be so modified as to exclude from its operation the personal property in New Jersey and, as so modified, it should be affirmed, without costs to either party as against the other.

MAYNARD, J., not sitting.