THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.*
JENNIE SANFORD GRIFFITH, Exrx., *et al.* Appellees.

*Opinion filed June 29, 1910.*

1. INHERITANCE TAX—*inheritance tax is a tax upon right of
succession.* An inheritance tax is not a tax upon the property it-
self but upon the right to succeed to the property.

2. SAME—*laws governing descent and devise of property are
subject to legislative change.* The laws that govern the descent
and devise of property are statutory, and are subject to legisla-
tive change, at discretion.

3. SAME—*State may impose conditions on privilege of succes-
sion.* The succession to the ownership of property being by per-
mission of the State, the State may impose conditions in granting
such privilege; and the imposition of an inheritance tax has been
upheld where the State had jurisdiction of the beneficiary and the
subject matter, regardless of the actual location of the personal
property or the domicile of the decedent.

4. SAME—*inheritance tax is not strictly a tax.* An inheritance
tax is not a "tax" in the strict sense of that term, nor are the In-
heritance Tax act and the general Revenue law *in pari materia,*
as they were passed at different times and upon different theories,
the former being directed to the right to succeed to the ownership
of property and the latter to the property itself.

5. SAME—*what property of non-resident decedent is subject to
inheritance tax.* Tangible personal property of a non-resident de-
cedent which is located in Illinois, and stocks and bonds of do-
mestic corporations found in his safety deposit box in Illinois and
cash on deposit in Illinois, are subject to an inheritance tax, but
stocks and bonds of foreign corporations found in such safety de-
posit box are not subject to such a tax.

6. SAME—*doubtful language should not be extended.* The
meaning of section 1 of the Inheritance Tax law as to what prop-
erty of non-resident decedents shall be subject to the tax is not
entirely clear, and the language thereof should not be extended
beyond the clear import of the words used, in order to bring prop-
erty within the provisions of the act and subject it to the tax.

7. SAME—*section 10 of Inheritance Tax act construed.* Sec-
tion 10 of the Inheritance Tax act, authorizing the State treasurer,
upon satisfactory proof rendered to him by the county treasurer,
to refund taxes erroneously paid, was not intended to authorize
the county treasurer to refund taxes erroneously paid to him, as
the statute requires him to turn over such taxes to the State treas-

urer at stated intervals, and it will be presumed that he has performed his duty.

8. STATUTES—*rule where statute of another State is adopted.* Where one State adopts a statute of another State which has received judicial construction, it is presumed that the legislature intended the statute should receive the same construction by the courts of the State adopting the statute, unless such construction is in conflict with the spirit and policy of its laws.

APPEAL from the County Court of Cook county; the Hon. LEWIS RINAKER, Judge, presiding.

W. H. STEAD, Attorney General, and WALTER K. LINCOLN, for the People.

MUSGRAVE & LEE, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal by the People from a judgment of the county court of Cook county fixing inheritance taxes upon certain property owned by Merritt E. Sanford at the time of his death. He died in Chicago October 28 1906. At that time, and for a number of years immediately prior thereto, he was a resident of Oneida county, New York. During the last fourteen years of his life he had spent a considerable portion of his time in Chicago where he stayed at the home of his sister, Jennie Sanford Griffith. His will was admitted to probate in Cook county on the petition of said sister, and also probated, afterward, in Oneida county, New York. His sister, the said Jennie Sanford Griffith, of Chicago, and Elihu Dwight Church, Jr., of New York City, were named in the will as executors. Letters testamentary were issued by the probate court of Cook county to Jennie Sanford Griffith alone, and by the surrogate of Oneida county to both of the persons named as executors. Sanford died seized of real estate in the city of Chicago valued at $20,000. For at least fourteen years immediately preceding his death he rented a safety deposit vault

from the Fidelity Safe Deposit Company of Chicago, in which he kept certificates of stock, bonds and other papers. This box was found to contain, after his death, belonging to his estate, securities of the following values: Certificates of stock of Illinois corporations, $21,575; certificates of foreign corporations, $24,962.50; bonds issued by Illinois corporations, $19,484.58; bonds issued by foreign corporations, $38,910, and bonds of a railroad company organized under the laws of Illinois and Iowa, of the value of $9100. He also left cash on deposit with certain Chicago banks to the amount of $1194.76, and other personal effects and chattels in Cook county valued at $1523. The remainder of his personal estate was valued at $3000, and consisted of household furniture, horses and other chattel property in the State of New York. The appraiser appointed by the county court of Cook county included in his appraisement of property within this State all the property above mentioned except the chattel property in New York. The county judge of Cook county, upon such report and appraisement, assessed and fixed the inheritance taxes to be paid by the beneficiaries under the will at $1423.25. April 26, 1907, the executrix, in compliance with said order of the county judge, paid under protest to the county treasurer of Cook county the sum of $1352.09, being the taxes so fixed, less five per cent thereof deducted in accordance with the statute on account of payment within six months after testator's death. From this order of the county judge fixing the taxes an appeal was prayed to the county court of Cook county, where, after a hearing on May 17, 1909, the stocks and bonds of foreign corporations were held not to be property within the State of Illinois at the time of Sanford's death and not subject to any inheritance tax under the laws of this State. The court found that the taxes on the remainder of the property included in the appraiser's report should be $900, and ordered that the county treasurer refund to the executrix the sum of $497.09, be-

ing the difference between the amount previously fixed by the county judge and the amount as finally fixed by the county court, less the discount in both cases. On this appeal counsel for the State insist that the county court erred in holding that the foreign stocks and bonds kept by Sanford in the safety deposit box in Chicago were not property within the State, according to the meaning of the Inheritance Tax statute. Appellees have assigned cross-errors questioning the action of the county court in holding that any of the personal property of the deceased was subject to the tax.

Counsel for appellees argue that in construing the Inheritance Tax statute, if there is doubt as to the meaning of any of its provisions, the rule that the situs of the personal property follows the domicile of its owner should be followed. The English rule is that in these matters the maxim *mobilia sequuntur personam* applies, and such tax on personal property is levied only at the domicile of the decedent. (*Thompson* v. *Advocate General,* 12 Cl. & Fin. 1; DosPassos on Inheritance Tax Law,—2d ed.—149.) In many of our States the actual or real situs of the property having a visible and tangible existence, rather than the domicile of the owner, has been the place for the fixing of such taxes. (DosPassos on Inheritance Tax Law,—2d ed.—167.) The tendency of modern legislation in this country is to extend the State's taxing power to all property within its jurisdiction, (27 Am. & Eng. Ency. of Law,—2d ed.—650,) and this is especially true as to inheritance taxes on the right of succession to all property, whether real or personal, tangible or intangible, which passes, testate or intestate, from decedents to other persons.

The ancient maxim that movables follow the domicile of the person was an outgrowth of conditions which have long since ceased to exist, and the rule has been greatly limited in certain matters, such as taxation and the subjecting of personal property of non-residents to the claims

of local creditors. It is usually, however, the law that personal property is sold, transmitted or obtained under the will or intestate laws according to the law of the domicile and not that of the situs of the property. (*Davis* v. *Upson,* 230 Ill. 327; *Eidman* v. *Martinez,* 184 U. S. 578.) The law as to probating foreign wills has been modified by the legislature of this State as to personal property since the decision in *Davis* v. *Upson, supra.* (Laws of 1909, sec. 10, p. 472.)

An inheritance tax is not upon the property itself, but upon the right to succeed to the property. (*United States* v. *Perkins,* 163 U. S. 625; *Magoun* v. *Illinois Trust and Savings Bank,* 170 id. 283.) The laws that govern the descent and devise of property are statutory and are subject to legislative change, at discretion. (*Kochersperger* v. *Drake,* 167 Ill. 122.) The succession to the ownership of property being by permission of the State, the State can impose conditions in granting such privilege or permission. The courts, therefore, have upheld the imposition of an inheritance tax whenever the State had jurisdiction of the beneficiary or the subject matter, regardless of the actual location of the personal property or the domicile of the decedent. It has been held that a tax could be collected on a deposit left by a non-resident testator with a trust company in New York and also on a debt due him in the same State, (*Blackstone* v. *Miller,* 188 U. S. 189,) the theory being that the transfer of the deposit was subject to the laws of New York, and that the collection of the debt could only be enforced because of the control of the State courts over the debtor. Stocks and bonds of domestic corporations and bonds of foreign corporations owned by a non-resident decedent but deposited in the State have been held subject to such tax. (*In re Whiting,* 150 N. Y. 27; *In re Morgan,* 150 id. 35.) Tangible personal property outside of the State, of a resident decedent, has been held subject to this tax, (*In re Swift,* 137 N. Y. 77,) as has been also

the stock of a foreign corporation. (*In re Merriam,* 141 N. Y. 479.) The liability of property to an inheritance tax does not depend upon the location but upon whether the beneficiary came into its possession through the exercise of a privilege conferred by the State. (*State* v. *Hull,* 111 App. Div. (N. Y.) 322.) The question in this case, as in all other cases, is not the constitutional power of the legislature to levy an inheritance tax on personal property of a non-resident decedent, whether such property be tangible or intangible, since that has been firmly established, but is as to the intent to do so under the particular act in question.

Counsel further insist that as there has been no previous decision in this State construing this law on the questions here involved, the rulings of this court on general taxes should not only be persuasive, but controlling. We cannot so hold. One of the chief reasons given in support of the legality of inheritance taxes has been that they were not "taxes" in the strict sense of the term. This law has no relation to the general Revenue law. The two acts cannot be held to be *in pari materia.* "While the object of both is to raise revenue for the support of the government, they have nothing else in common." (*In re Knoedler,* 140 N. Y. 377.) They were passed at different times and upon entirely different theories. One taxes the property itself, and the other the right of succession to the property. "Laws imposing general taxes upon real and personal property are not controlling when applied to taxes upon the succession, when such succession takes place and is governed by the laws of a foreign country. The actual situs of the property in such cases cuts but a small figure, while in the case of general taxes upon such property it is now considered determinative of the whole question." *Eidman* v. *Martinez, supra,* on p. 589.

The case of *Buck* v. *Beach,* 206 U. S. 392, is strongly relied upon by appellees as supporting their contention on this point. That is a case where the State of Indiana at-

tempted to levy general taxes upon promissory notes. of the decedent customarily kept in Indiana by his agent but against persons residing in Ohio, and which notes were sent, at stated intervals, to another agent in Ohio for collection and endorsement of the interest, the money paid as interest being deposited in the latter State. The decedent lived in New York. It was held that such notes, being simple contract debts, could not, under the facts of the case, be treated as property and taxed in Indiana, but the opinion stated (p. 408): "Cases arising under collateral inheritance or succession tax acts have been cited as affording foundation for the right to tax as herein asserted. The foundation upon which such acts rest is different from that which exists where the assessment is levied upon property. The succession or inheritance tax is not a tax on property, * .* * and therefore the decisions arising under such inheritance tax cases are not in point."

The law under which the tax here was. imposed went into force on July 1, 1895. The first section of that law, so far as it applies to the question now under discussion, reads: "All property, real, personal and mixed, which shall pass by will or by the intestate laws of this State from any person who may die seized or possessed of the same while a resident of this State, or, if decedent was not a resident of this State at the time of his death, which property or any part thereof shall be within this State, * * * to any person or persons or to any body politic or corporate in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled in possession or expectation to any property or income thereof, shall be and is subject to a tax at the rate hereinafter specified to be paid to the treasurer of the proper county, for the use of the State." (Hurd's Stat. 1908, p. 1819.)

It is earnestly insisted by counsel for the appellees that none of the personal property of the decedent found in this

State is subject to this tax, as under a fair construction of this statute it did not pass under the laws of this State or under a will operative by reason of such laws. We cannot assent to this view. The provisions of our statute above set forth are a substantial copy of the New York statute of 1885 as amended in 1887. Previous to the adoption of the statute in this State the highest court of New York had construed the statute of that State as applying to the estates of non-resident decedents. (*In re Romaine,* 127 N. Y. 80; *In re Enston,* 113 id. 174; *In re James,* 144 id. 6.) The general rule is, that where a statute is adopted from another State, it will be presumed that the legislature intended it to receive the construction given by the courts of that State if it had been previously construed, unless in conflict with the spirit and policy of our laws. (*ReQua* v. *Graham,* 187 Ill. 67; *Rhoads* v. *Chicago and Alton Railroad Co.* 227 id. 328.) The construction of the New York statute of 1887 by the courts of that State is in entire harmony with the spirit and policy of our laws. The legislature of Illinois has recently passed an act revising the entire Inheritance Tax law, (Hurd's Stat. 1909, p. 1897,) the first section of which is practically a copy of the New York law of 1892, so far as it affects any question raised or argued in this case. Under the construction given to said New York law of 1892 by the courts of that State, all of the personal property of a decedent found in the safety deposit vault in this State would be subject to payment of the inheritance tax under the law now in force in this State, except the stock of foreign corporations. This is conceded by counsel for appellees. Furthermore, this court and the Supreme Court of the United States have stated that our statute of 1895 applied to the property of non-resident decedents. *Billings* v. *People,* 189 Ill. 472; *Eidman* v. *Martinez, supra.*

Counsel for appellees further insist that even though the tangible property found in this State is subject to the

law of 1895, it was not the intention of the legislature to subject the bonds and stocks of domestic corporations to such tax, while it is just as earnestly argued by counsel for the State that not only these stocks and bonds should be held subject to this tax, but that the county court erred in not subjecting the stocks and bonds of foreign corporations to the tax. The decisions from the State of New York construing the New York statute upon which our statute is based are relied upon by both parties to this litigation as supporting their respective contentions. A brief review of these decisions is therefore necessary.

In the *Romaine case, supra,* the Court of Appeals of New York, in 1891, in construing the 1887 statute of that State, held that certain stocks and bonds, when habitually kept in that State by a non-resident decedent, whether for investment or merely for safe keeping, were subject to the tax. It did not, however, appear in that case whether the stocks and bonds were issued by foreign or domestic corporations. In the *James case, supra,* the same court, in 1894, after discussing the *Romaine case, supra,* and referring to the fact that it was not said in the *Romaine case* whether the stocks and bonds were of foreign or domestic corporations, held that under the act of 1887 a tax could not be levied on the stocks of foreign corporations. In *In re Gibbes' Estate,* 83 N. Y. Supp. 53, the Appellate Division of that State held, in 1903, that the bonds of a foreign corporation left on deposit with a bank in New York at the time of a non-resident decedent's death were not subject to the tax. This decision was affirmed by the Court of Appeals in 176 N. Y. 565. This last decision having been rendered long after the Inheritance Tax law which we are now construing was adopted, it cannot be presumed that the legislature had the construction of the New York statute, as made by that decision, in mind at the time of the enactment of our statute. (2 Lewis' Sutherland on Stat. Const.—2d ed.—404.) The decisions of the New York

Court of Appeals in *In re Bronson,* 150 N. Y. 1, *In re Hou-
dayer,* 150 id. 37, *In re Whiting, supra,* and *In re Morgan,
supra,* were all rendered after the adoption of our act, and
construed the New York law of 1887 after it had been
amended in 1892. No presumption as to legislative inten-
tion concerning the construction of our statute can arise
from these later decisions. Having in view the special
statutes and facts in each case, they are only persuasive,
and can be entitled to no greater weight than may be due
to the reasoning found therein. The decisions of the court
of last resort in New York called to our attention which
have attempted to construe the statute of 1887 before our
law was adopted, are *In re Romaine, supra, In re Swift,
supra, In re Merriam, supra,* and *In re James, supra.* From
the statements of these cases already given herein, it will
be seen that the *Romaine* and *James cases* are the only
ones especially in point on the questions here under discus-
sion, and while these two may not be entirely in harmony
on the question of the stocks and bonds of foreign corpora-
tions owned by non-resident decedents being subject to the
tax, it is perfectly clear that both of them held that the
stocks and bonds of domestic corporations found in the
State, whether kept there for investment or for safe keep-
ing, were subject to the tax.

The Court of Appeals of New York, in passing on
the law of 1885, (which was very nearly like the law as
amended in 1887,) stated that it was singularly involved
and obscure in its phraseology and the precise legislative
intent very far from being clear, (*In re Enston, supra,* on
p. 177,) and after it was amended, in 1887, the same court
said with reference to the amendment, in *In re Romaine,
supra,* (p. 84): "What did the legislature wish to accom-
plish when it inserted these words? This question is not
easily answered, for the section is so involved as to make
the duty of discovering its meaning unusually difficult."
We are disposed to agree with the New York court that

section 1 of our Inheritance Tax law (substantially copied from the New York statute of 1887) is involved and its meaning and construction not entirely clear as to what property of non-resident decedents found within the State was intended to be taxed. Under the New York decisions construing the statute previous to the adoption here, as well as from the wording of the statute, there is a basis for contending, as does counsel for the State, that the bonds of foreign corporations habitually in this State, even though only here for safe keeping, should be taxed. In reaching a conclusion on this question, however, it is necessary to keep in mind the familiar rule, "applicable to all forms of taxation, and particularly special taxes, that the sovereign is bound to express its intention to tax in clear and unambiguous language." (*Eidman* v. *Martinez, supra,* on p. 583, and cases cited; *Kennedy* v. *St. Louis, Vandalia and Terre Haute Railroad Co.* 62 Ill. 395.) If there be doubt as to whether, under the language, it was intended to tax certain property, the language should not be extended beyond the clear import of the words used in order to make the property a subject of tax. (Cooley on Taxation,— 2d ed.—267.) There is no evidence in the record showing that the money that was used in purchasing the stocks and bonds found in the safety deposit box of decedent was kept here for investment. The county court found, and appellant concedes, that the stocks and bonds were only left in Illinois for safe keeping.

On the facts in this record we are disposed to hold, in the light of the New York decisions, that the trial court construed our statute of 1895 correctly in holding that the stocks and bonds of domestic corporations found in the safety deposit box, the cash on deposit and the tangible personal property in this State were subject to the tax and that the stocks and bonds of foreign corporations found in said safety deposit box were not subject to the tax. Counsel for the State seem to concede that if this be the proper

construction of the act, the trial court was right in holding that the bonds of the railroad company organized under the laws of Illinois and Iowa, and located partly in both States, were not property, within the meaning of the statute subject to the tax.

Counsel for appellant further contends that the county court erred in ordering the county treasurer to refund to the executrix $497.09. The court evidently based this part of its order upon section 10 of the act of 1895, which is the same as section 10 of the present act, and reads: "When any amount of said tax shall have been paid erroneously to the State treasurer, it shall be lawful for him on satisfactory proof rendered to him by said county treasurer of said erroneous payments to refund and pay to the executor, administrator or trustee, person or persons who have paid any such tax in error the amount of such tax so paid, provided that all applications for the re-payment of said tax shall be made within two years from the date of said payment." (Hurd's Stat. 1909, p. 1900.) Section 19 of the act of 1895 (which is section 20 of the present act) requires the county treasurer to pay over to the State treasurer all moneys collected by him under the provisions of the act and make a report to the auditor on the first Monday of March and September of each year, with certain interest on money not paid over in proper time. It will be presumed that he performed his duty and that this money was paid to the State treasurer. (*Whittemore* v. *People,* 227 Ill. 453.) We do not think it was the intention of said section 10 that the county treasurer should be authorized thereunder to re-pay taxes erroneously paid to him. Clearly, under that section it was only intended that the State treasurer, upon proper proof, should refund such amounts. The provision of the order of the county court requiring the county treasurer to refund the money in question was not in accordance with this law. The order in that respect should have left appellees free to pursue such

remedies as they might deem proper and effective for the recovery of the money erroneously paid to the county treasurer, and by him, as we must assume, paid to the State treasurer.

The judgment of the county court will therefore be affirmed as to the amount of the inheritance tax to be paid by the beneficiaries in this estate, but that part ordering the re-payment by the county treasurer of said $497.09 will be reversed and the cause remanded, with directions to enter an order in conformity with the views herein expressed.

*Reversed in part and remanded, with directions.*