THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE UNION TRUST COMPANY *et al.* Appellants.

*Opinion filed June 21, 1912—Rehearing denied October 3, 1912.*

1. INHERITANCE TAX—*the laws governing general taxes are of little assistance in considering inheritance tax.* Laws governing general taxes upon real and personal property are not controlling and give little assistance in considering the legality of an inheritance tax.

2. SAME—*succession to movable property is governed by law of owner's domicile at his death.* The succession to movable property is usually governed by the law of the owner's domicile at the time of his death, and when the laws of another jurisdiction are applied it is because the principles of comity recognize that such laws are applicable to the particular case.

3. SAME—*personal property in foreign State is subject to inheritance tax at owner's domicile.* Personal property within the jurisdiction of a foreign State at the time of the death of its owner, who is a resident of Illinois, is subject to an inheritance tax in Illinois.

4. SAME—*when decree of a California court does not bar inheritance tax in Illinois.* A decree of a California court distributing the estate and discharging the administrator with the will annexed and finding that all claims presented against the estate have been paid, including taxes and inheritance taxes, and ordering the administrator and his sureties to be relieved of any obligations which thereafter accrue, does not bar the collection of an inheritance tax in Illinois, and in ordering the payment of such tax the Illinois court is not denying full faith and credit to the decree of the California court.

5. SAME—*inheritance tax is not a tax upon the estate.* It is the intention of the Illinois Inheritance Tax law that a person shall be taxed only upon the beneficial interest which he receives, and such tax is not a tax upon the estate but upon the right to receive a portion of the estate.

6. SAME—*effect of the provision that executors, administrators and trustees shall be personally liable for tax.* Section 5 of the Inheritance Tax law, providing that executors, administrators and trustees shall be personally liable for the payment of inheritance taxes and interest, applies only to property within the State at the testator's death or which thereafter comes into their possession.

7. SAME—*executor or trustee not required to retain entire inheritance tax.* Under the Illinois Inheritance Tax law the execu-

tor, administrator or trustee cannot retain out of the property that comes into his hands, as a gross amount, the entire sum of the inheritance taxes imposed, but can only retain from any legacy in his hands the inheritance tax due thereon.

8. SAME—*trustee is not responsible for Illinois tax on legacies paid in foreign State.* Where legacies are paid by a foreign administrator and the balance of the estate is paid over to an Illinois trustee under the will, neither the Illinois administrator nor the trustee is responsible for the Illinois inheritance tax on the legacies so paid out, and if such tax is collectible at all it must be collected from the beneficiaries· to whom such legacies were paid.

9. SAME—*effect where widow makes compromise after repudiating ante-nuptial contract and renouncing the will.* Where the widow, after repudiating an ante-nuptial contract and renouncing the will, makes a compromise agreement to avoid litigation, by which she receives more than under the contract and will but less than she would be entitled to under the statute, the amount which she would have received under the contract and the will is the amount upon which she should pay an inheritance tax.

APPEAL from the County Court of Cook county; the Hon. JOHN E. OWENS, Judge, presiding.

KRAUS, ALSCHULER & HOLDEN, (CHARLES R. HOLDEN, WILLIAM S. MILLER, and AMERICUS B. MELVILLE, of counsel,) for appellants.

W. H. STEAD, Attorney General, (WALTER K. LIN-·COLN, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

November 1, 1905, James C. King died testate, domiciled at Chicago, Illinois, leaving him surviving a widow, Maud A. Robinson King, but no child, children or descendants thereof. On July 10, 1901, an ante-nuptial agreement was executed between said James C. King and Maud A. Robinson, then a spinster, by which she agreed to receive from his estate $100,000 in lieu of all her future rights under the law as his wife or widow. By his will, executed on July 6, 1901, after giving a number of legacies to nephews, nieces and other persons, and a legacy of $10,000

to Maud A. Robinson, whom he afterwards married, he left the remainder of his estate to a trustee to organize and maintain a charitable institution to be called "The James C. King Home for Old Men." He executed a codicil to his will July 13, 1901, in which he referred to the ante-nuptial agreement, and re-published and confirmed the will with all of its terms, conditions and legacies, and stated that the ante-nuptial agreement was in lieu of a settlement for all of his wife's interest in his estate. The will and codicil were admitted to probate December 19, 1905, in the probate court of Cook county. December 23 of that year the widow executed an instrument repudiating the ante-nuptial agreement and renouncing the will. In February, 1906, the widow and the residuary legatee, the James C. King Home for Old Men, through its trustee, the Northern Trust Company, entered into an agreement whereby the widow was to retain as her share of the estate $600,000 in money and securities and an income for her life from a fund of $400,000. A bill was filed in the circuit court of Cook county with the necessary parties and a decree entered confirming this compromise settlement. March 25, 1907, the widow withdrew her renunciation of the will.

James C. King died seized of certain property, consisting of stocks and bonds of non-Illinois corporations, which were at that time lying in a safety deposit box in Los Angeles, California, amounting in value to something over $600,000. He also had a bank deposit of $16,140 in Los Angeles. His entire estate, real and personal, including the personal property in California, amounted approximately to $4,100,000. In February, 1906, an administrator with the will annexed was appointed by the superior court of Los Angeles county, California, who took possession of the personal property in that State left by the decedent. He published a notice to creditors and filed an inventory. No claims were presented against the estate under that administration. The California administrator, after paying

the expenses of the administration, including inheritance taxes, paid out approximately $114,000 to the various legatees under the will, said legatees being the nephews, nieces, grand-nephews and grand-nieces and a brother and sister of said testator, and including a $10,000 legacy to a Pasadena hospital association. After the payment of these legacies and the costs and inheritance taxes under the California laws, the administrator there had on hand for distribution $439,727.17. The superior court of Los Angeles county, after approving the payment of the costs, expenses and inheritance tax, ordered and decreed that the remainder of the property, consisting of said $439,727.17 in cash, be turned over, under the provisions of the will, to the Northern Trust Company of Chicago as trustee of said decedent, said sum to be set apart as provided by the will, as follows: Forty thousand dollars for each of the testator's nephews and nieces, the net income of said sum to be paid to them semi-annually for fifteen years after the testator's death, and at the end of said period the principal of said sums to be transferred, conveyed and assigned to said nephews and nieces absolutely; if at any time during the continuance of said trust any of said nephews or nieces should die leaving lawful issue surviving, said lawful issue to take *per stirpes* the share in the income and principal which their parent or parents would have taken if living and at the same time said parents would have taken the same if living; in the event of the death of any such nephews or nieces without lawful issue, then the funds set apart for such deceased nephew or niece to be by said trustee at once transferred to and become a part of the residuary estate; upon trust, also, that there be paid out of the income of the balance of said trust estate, if any, to the brother and sister of said testator, in equal semi-annual installments, $2500 per annum during the life of the said brother and sister; and upon the further trust that the balance of said trust estate, if any, should be used for the

creation, erection, maintenance and endowment of an old men's home in or near Chicago. Then follows in the decree a detailed statement as to the management and care of said old men's home from said funds in accordance with the provisions of the will.

November 2, 1906, the county court of Cook county appointed an appraiser to recommend the amount of inheritance tax in said estate. In March, 1907, the probate court of Cook county approved the final report of the Union Trust Company, administrator with the will annexed of said estate in Cook county, including the compromise settlement with the widow. In August, 1909, the appraiser reported to the county judge of Cook county his appraisement, and the report was approved by said county judge. From the order approving the report all parties appealed to the county court of Cook county. That court thereafter entered an order fixing an inheritance tax on all rights to succeed to the property of said testator, including the legacies that had been paid by the California administrator, less the exemptions allowed by the law of this State. The tax assessed by the order of the county court against the legacies paid in full, and the present value of those to be paid hereafter by the Northern Trust Company, was $6567.10. There were also future interests included in said fund paid the trust company by the California administrator which might hereafter be required to pay an inheritance tax in this State. The order of the county court also appraised the property received by Maud A. Robinson King, the widow, at $2,044,685.82, and fixed the tax, after allowing the exemptions, at $20,246.85. The county court held as a proposition of law that the Union Trust Company of Chicago, both as administrator with the will annexed and in its corporate capacity, was liable for the inheritance tax of said widow, with interest until paid, and was also liable for all inheritance taxes, with interest, due and owing in said estate, and that said Union Trust

Company, as administrator with the will annexed and individually, and the Northern Trust Company, as trustee and individually, were jointly and severally liable for all inheritance taxes, and interest, on all legacies and successions, payable out of the funds limited to said Northern Trust Company.

It is insisted by appellants that the county court was without authority, under the law, to include the personal property situated in California in fixing the inheritance tax. They argue that the power to tax is limited to property over which the sovereign power of the State extends, and that the personal property of a resident decedent located outside of Illinois is not within the dominion of the State. The ancient maxim of the law was that the personal property followed the person. The great increase in that class of property has necessitated certain limitations of the maxim, especially in matters of taxation. "It is still the law that personal property is sold, transmitted, bequeathed by will and is descendible by inheritance according to the law of the domicile and not by that of its *situs."* (*Eidman* v. *Martinez,* 184 U. S. 578.) The general rule in this country is, that the succession to movable property is governed by the law of the owner's domicile at the time of his death. (*Frothingham* v. *Shaw,* 175 Mass. 59.) When, however, we apply the laws of another jurisdiction, we do so because the principles of comity recognize that those laws are applicable to a particular case. The succession determined by the law of domicile is generally recognized in other jurisdictions. This recognition, however, is limited by the policy of the local law, especially in matters of taxation and the subjecting of the personal property of non-residents to the claims of local creditors. The law in California is, that the distribution of the decedent's personal estate will be governed by the law of his actual domicile at the time of his death, subject to certain limitations not here involved. (*Estate of Apple,* 66 Cal. 432; *Murphy* v.

*Crouse,* 135 id. 14.) "No one doubts that succession to a tangible chattel may be taxed wherever the property is found, and none the less that the law of the *situs* accepts its rules of succession from the law of the domicile, or that by the law of the domicile the chattel is part of a *universitas* and is taken into account again in the succession tax there." (*Blackstone* v. *Miller,* 188 U. S. 189.) There is no constitutional objection to a law which lays an inheritance or succession tax according both to the principle of the domicile and to the principle of the *situs,* although this may result in double taxation. (1 Wharton on Conflict of Laws,—3d ed.—sec. 80*f.*) It may be inexpedient or inconsistent that one State should tax according to the *situs* and the other at the same time according to the fiction that succession after death is governed by the domicile of the decedent, but these inconsistencies infringe no rule of constitutional law. *Blackstone* v. *Miller, supra.*

Counsel have cited many authorities with reference to the power of a State as to general taxes. Laws imposing general taxes upon real and personal property are not controlling and usually give little assistance in considering the legality of inheritance taxes. (*People* v. *Griffith,* 245 Ill. 532.) We therefore deem it unnecessary to discuss or distinguish those authorities. *Connell* v. *Crosby,* 210 Ill. 380, cited and relied on, is not in point here, because the question there was whether an inheritance tax could be collected in this State on real estate in another State, and this court held that lands in a sister State pass, not under the laws of this State, but under those of the State where the land is situated. That, however, is not the law with reference to personal property in another State.

Counsel also rely on *Keeney* v. *New York,* 222 U. S. 525. In that case Susan A. Keeney, a resident of New York, executed in that State a deed whereby she conveyed a cattle ranch in Texas and certain stocks and bonds to the Fidelity Trust Company of Newark, New Jersey, to hold

in trust during her lifetime and after her death to be paid to her children or their issue. The court, in discussing the question as to whether certain stocks and bonds in New Jersey were chargeable with a transfer tax in New York after the death of Susan A. Keeney, said (p. 537) that "the real estate and tangible property in Texas were not within the taxing jurisdiction of the State of New York and there was no effort to tax the transfer of that property." Counsel argue from this statement that the court intended to include in the term "tangible property in Texas" personal property in that State, and to hold personal property not situated in New York could not be compelled to pay a transfer or inheritance tax. That certainly was not the holding, for the opinion continues: "It is urged that on the same principle the stocks and bonds could not be taxed because they were in New Jersey in the hands of a trustee holding title and possession by virtue of a deed made three years before the grantor died," and the property in New Jersey was held subject to the New York transfer tax.

We believe the authorities are a unit in holding that personal property within the jurisdiction of a foreign State may be made subject to a succession or inheritance tax in the place of the decedent's or testator's domicile. (See, in addition to the authorities already cited, *McCurdy* v. *Mc-Curdy,* 83 N. E. Rep. (Mass.) 881; *In re Estate of Swift,* 137 N. Y. 77; *In re Hull,* 111 App. Div. (N. Y.) 322; *In re Miller's Estate,* 182 Pa. St. 157; *In re Hopkins,* 60 Atl. Rep. (Conn.) 657; *In re Howard's Estate,* 80 Vt. 489; DosPassos on Inheritance Tax Law, (2d ed.) sec. 46; Dicey on Conflict of Laws, (2d ed.) 664; McElroy on Transfer Tax Law, 120; 37 Cyc. 1654, and cases cited.) The constitutional right of a State to impose such a tax at the domicile of the decedent cannot be questioned. The discussion in many of the decisions relied on by appellants turns on the meaning of the statute and whether the legis-

lature intended to levy such a tax. The Inheritance Tax law of New York contemplated that such a tax should be imposed. (*In re Estate of Swift, supra.*) That act, after that decision, so far as it affects this question, was substantially adopted in this State. It must be presumed, therefore, that our legislature intended it to receive the construction given it by the courts of New York. (*People* v. *Griffith, supra.*) The personal property of the testator in California at the time of his death was subject to the payment of inheritance taxes in Illinois.

The further contention is made that the trial court, in entering the order fixing the inheritance taxes on the personal property found in California, failed to give due faith and credit to the decree of the superior court of Los Angeles county distributing the estate and discharging the administrator. That decree found that all claims presented against said estate had been paid, including taxes and inheritance taxes, and ordered that the administrator and his sureties be relieved of any obligations thereafter occurring. Was this finding conclusive, under the statutes and practice of the courts of California, as to all claims against the estate, the executor, legatees or distributees?

In *Tilt* v. *Kelsey*, 207 U. S. 43, the New York court attempted to assess an inheritance tax against the property and the executor when the estate had already been administered upon and distributed in New Jersey, the New Jersey court holding that the testator was a resident of that State. The New York court held that the testator was a resident of New York. The United States Supreme Court in that case held that the New York courts were not precluded by the New Jersey courts from investigating whether or not the testator was a resident of New Jersey or of New York. It further held that under the law and usage in the courts of New Jersey, as presented in that record, the New Jersey court had jurisdiction to probate the will and administer the estate and direct the final dis-

tribution, which should be final so far as concerned any person who had a demand against the estate; that in ascertaining what faith and credit must be given to the judicial proceedings in New Jersey to carry into effect the constitutional provision as to full faith and credit being given to the judgment of any court in the United States, it must be ascertained what credit is given to such judicial proceedings by the laws of New Jersey; that the full faith and credit to be given to the judgments of any court under the constitution of the United States means such faith and credit as are given in the State where rendered; that "they can have no greater or less or other effect in other courts than in those of their own State." The court held that on the record there presented the decree of the New Jersey court was a final bar to all claims as against the estate and against the executors and distributees of the property.

In the last case cited the United States Supreme Court did not refer to the case of *Borer* v. *Chapman,* 119 U. S. 587. In the *Borer case* a citizen in New Jersey recovered judgment in a civil action on a contract against a citizen of Minnesota whose property was situated principally in California, and who died testate, leaving real estate and personal property to various persons in Minnesota. His will was admitted to probate in Minnesota and letters testamentary issued thereon. Ancillary proof was then made in California and letters issued on the certified copy of the will, and the estate was administered in California in accordance with the laws of that State and distributed according to the will. The final account was rendered to the probate court in California and the executor discharged by that court. A creditor in Minnesota did not present his claim for payment in California. This creditor brought suit in Minnesota against one of the Minnesota executors. The United States Supreme Court held that the creditor was not barred by the proceedings and decree in California from the prosecution of the suit; that he had a right to

255 – 12

follow into the hands of the holders in Minnesota, whether a legatee or executor, the assets of the deceased which had been distributed by the order of the probate court in California, and that the Minnesota court, in so doing, was not contravening that provision of the constitution respecting the faith to be given to the judgments and public acts in every other State. The question in the Borer suit, so far as we can see, differed from *Tilt* v. *Kelsey* only in that in the latter case all of the property was finally distributed in New Jersey, while in the *Borer case* only a part of the funds was distributed in California. Under the holding in the *Borer case* the contentions of appellants on this point are without force.

Without attempting here to decide whether these two cases are in conflict or can be distinguished, we will consider whether, under the rules of law laid down in *Tilt* v. *Kelsey, supra,* on the facts in this record the county court of Cook county, in entering this judgment as to the inheritance tax, contravened constitutional provisions. The New York courts, after a somewhat elaborate discussion of a similar question, held that such a decree of a California court was binding only "on heirs, legatees or devisees," and did not preclude collecting claims for inheritance taxes in another State. (*In re Cummings' Estate,* 127 N. Y. Supp. 109.) While we might not agree with all the reasoning in that case we think the conclusion was correct. If it be conceded, as contended by appellants, that under the statutes of California, as construed by her courts, ordinary claims of creditors against an estate should be presented to the probate court, and that its determination as to such claims, whether the creditor appears and presents his claim or fails to appear, will be conclusive, "subject only to be reversed, set aside or modified on appeal," (*Hill Co.* v. *Lawler,* 116 Cal. 359; *Crew* v. *Pratt,* 119 id. 139; *Toland* v. *Earl,* 129 id. 148; *Childs* v. *DeLaveaga,* 150 id. 281; *St. Mary's Hospital* v. *Perry,* 152 id. 338;)

does it follow that the claim for the Illinois inheritance tax must be so presented in order not to be barred?

An inheritance tax has been held by the courts of California not to be one of the expenses of administration or a charge upon the general estate of the decedent, but in the nature of an impost tax or tax upon the right of succession, to be imposed upon the several amounts of the decedent's estate to which the successors thereto are, respectively, entitled. It is a charge against each share or interest according to its value and against the person entitled thereto. (*Estate of Chesney,* 1 Cal. App. 31; *In re Wilmerding,* 117 Cal. 281.) That is also the law in this State. (*People v. Nelms,* 241 Ill. 571.) It was the intention of the legislature in this State that a person should be taxed only on the beneficial interest which he receives. It is not a tax on the estate but on the right to receive a portion of the estate. Such is the law generally. (*Knowlton* v. *Moore,* 178 U. S. 41; *In re Westurn,* 152 N. Y. 93.) The California courts have held that under its probate act the probate court can do no more than pay the claims against an estate and distribute the remainder to the heirs and devisees, or direct the administrator to do so; that it has no power to appropriate the share of an heir or devisee to the payment of his debts. (*In re Estate of Nerac,* 35 Cal. 392; *Dunsmoor* v. *Furstenfeldt,* 88 id. 522; 3 Kerr's Cyclopedic Codes of California Civil Proc. par. 1666, p. 2145.) True, the California statute provides that the administrator or executor may retain out of the funds in his hands sufficient to pay the inheritance tax imposed by the California statute, but that provision has no reference to an inheritance tax imposed by a foreign jurisdiction against a portion of the estate or against the person entitled thereto. Under the statute and practice of California courts the Illinois inheritance tax must be held to be a claim or debt against the distributee or a portion of the estate, and not against the estate itself. The conclusion necessarily fol-

lows that the judgment of the county court did not deny to the California court proceedings in question the full faith and credit to which they were entitled by the constitution and laws of the United States.

The order of the county court did not attempt to impose a liability upon the California administrator or his bondsmen or create a lien on any property in that State. Section 5 of the Inheritance Tax act provides that executors, administrators and trustees shall be personally liable for the payment of taxes and interest. This provision of the statute applies only to property within this State at the date of the testator's death, or to property that thereafter comes into the possession of the executor, administrator or trustee. The administrator here received none of the California personal property or its proceeds. A part of it was paid out in costs of administration in that State and to the legatees and the balance turned over to the trustee under the will, the Northern Trust Company. Under our law the administrator or executor or trustee cannot retain out of the property that comes into his hands, as a gross amount, the entire sum of the inheritance taxes imposed. That law intended that a person should be taxed only on the beneficial interest that he received, (*People* v. *Nelms, supra,*) and the administrator or executor can only retain from any legacy the inheritance tax due on that legacy.

Section 4 of the Inheritance Tax law of this State provides that any trustee "having any charge or trust in legacies or property for distribution, subject to the said tax, shall deduct the tax therefrom." The Northern Trust Company, as trustee, is charged with the responsibility of paying out of the respective amounts of the California personal property that came to its possession, for the various beneficiaries, the Illinois inheritance tax on such legacies before paying the legacies, but neither the administrator nor said trustee should be charged with the inheritance taxes on those legacies which did not come to their hands

but were paid out directly by the California administrator. While such payment directly by said California administrator did not make the legacies so paid free from the Illinois inheritance tax, yet the collection of that tax, if possible to be made at all, would be from the individual beneficiaries. There seems to be no dispute that the correct amount of inheritance taxes was imposed in the county court as to trust funds paid over to the Northern Trust Company by the California administrator, if that court had the right to impose any tax as to the California assets. As we understand this record some of these taxes are due now and some may fall due hereafter.

Counsel for appellants further insist that the court erred in basing the inheritance tax against Maud Robinson King, the widow, on a supposed succession by her to one-half of the entire estate. If the ante-nuptial agreement was valid and binding upon the widow she would only be entitled to receive the $100,000 under said contract and an additional $10,000 as a legacy under the will, and the inheritance tax on her right to succeed would be fixed on such amounts. (*People* v. *Estate of Field*, 248 Ill. 147.) If said ante-nuptial agreement was void, then, under the statute, she could renounce her rights under the will and elect to take, in lieu of dower and other rights, one-half of the real and personal estate after the payment of just debts and claims. In the latter event the amount of the inheritance tax would be fixed by the amount that she was entitled to receive under the statute. *Billings* v. *People,* 189 Ill. 472.

It is contended by counsel for the People that the renunciation under the will filed in the probate court of Cook county, taken in connection with the compromise, canceled and rendered null and void the ante-nuptial contract, while counsel for the appellants insist that the settlement did not render the contract void, but was simply a compromise to adjust the differences between the contending interests. The estate, under the Statute of Descent or by the Statute

of Wills, vests in the party entitled to receive it upon the death of the decedent; the inheritance tax accrues at the time the estate vests. If, in order to avoid litigation, the legatees, contestants and others in interest under a will compromise their claims, the concessions made, while binding upon the parties, take effect under the agreement, and are not a modification of the will or the rights under it or under the intestate laws of the State. (*In re Estate of Graves*, 242 Ill. 212; *Baxter* v. *Stevens*, 95 N. E. Rep. [Mass.] 854.) To permit the heirs, legatees and parties interested in an estate to change, by agreement among themselves after the death of the testator or decedent, the proportionate amounts of the property on which the respective beneficiaries should pay an inheritance tax, might in some instances practically deprive the State of all power of collecting any inheritance tax. Without setting out at length the details of the decree of the circuit court confirming the compromise agreement, we deem it sufficient to say that we do not think the decree or the agreement annulled and set aside the ante-nuptial contract. They constituted an adjustment and compromise of the dispute as to the validity of the ante-nuptial contract, whereby the widow received much less than she would have received under the statute if she had renounced the will and the ante-nuptial contract was held void, but much more than she would have received under the ante-nuptial contract and the will. The widow received from the estate of the testator, as her beneficial interest under the will and the intestate laws of this State, $110,000, and this is the amount upon which she should pay an inheritance tax, less the exemption to which she, as widow, is entitled. The county court should have so held.

The judgment of the county court will be reversed and the cause remanded to that court for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*