JENNIE SANFORD GRIFFITH, EXECUTRIX OF THE LAST WILL
OF MERRITT E. SANFORD, DECEASED,

*v.*

STATE OF ILLINOIS.

*Opinion filed February 16, 1911.*

1. INHERITANCE TAX—*stocks and bonds of foreign corporations
not subject to.* In this claim the inheritance tax was assessed and
fixed by the county judge of Cook County on all of the property of
deceased, which included stocks and bonds of foreign corporations,
which tax was paid by the executrix under protest. An appeal was
prayed by the executrix to the county court, which court reduced
the tax, eliminating from the appraisement the stocks and bonds of
foreign corporations.   An appeal was then prayed by the People
to the Supreme Court, which Court affirmed the decision of the
county court, as to the amount of the tax to be paid by the bene-
ficiaries, but reversed that part which ordered the county treasurer
to repay the sum of $497.00. (*People* v. *Griffith*, 245 Ill., p. 532.)

2. STATUTE—*section 10 construed.* Sec. 10 of the inheritance tax
law provides that when any amount of inheritance tax "shall have
been paid erroneously to the State Treasurer, it shall be lawful for
him on satisfactory proof rendered to him by said county treasurer
of said erroneous payments, to refund and pay to the executor, ad-
ministrator or trustee, person or persons who have paid any such
tax in error the amount of such tax so paid, provided, that all ap-
plications for the repayment of said tax shall be made within two
years from the date of said payment." In construing this section
the Supreme Court in the *Griffith* case, *supra*, held that it was not
the intention to authorize county treasurers to repay tax erroneously
paid to them, but that the State Treasurer, upon proper proof, is to
refund such amounts.

3. VOLUNTARY PAYMENT OF ILLEGAL TAX—*may not be recovered.*
It is a well established principle of law in this State, that there
can be no recovery of taxes erroneously or illegally paid, unless
the same were paid under duress or compulsion. (*Yates* v. *Insurance
Co.,* 200 Ill., 202.)

4. PAID UNDER PROTEST—*may be recovered.* In this claim the
executrix endorsed on the check "paid under protest" and since
simple payment under protest would not amount to duress or com-
pulsion, claimant, to recover, must recover, if at all, under sec-
tion 10.

5. STATUTE OF LIMITATIONS—*does not run pending appeal.* The requirement of section 10, that application for repayment must be made within two years from the date of payment, does not apply where an appeal is pending.

Musgrave and Lee, for Claimant.

W. H. Stead, Attorney General, and Roy Wright, Assistant Attorney General, for State.

The evidence in this cause shows that Merritt E. Sanford, a resident of Rome, New York, died in Chicago, October 28, 1906. His will was admitted to probate in Cook County on the petition of his sister, Jennie Sanford Griffith, to whom letters testamentary were issued as executrix, November 27, 1906. Sanford died seized of real estate in Chicago valued at $20,000. He was also found to be the possessor of certain securities, which were found in a safe deposit vault in Chicago, where they had been deposited by decedent for safe keeping. These securities and their appraised values were as follows: Certificates of stock of Illinois corporations, $21,575; certificates of foreign corporations, $24,962.50; bonds issued by Illinois corporations, $19,484.58; bonds issued by foreign corporations, $38,910; and bonds of a railroad company organized under the laws of Illinois and Iowa, of the value of $9,100. He also left cash on deposit with certain Chicago banks, to the amount of $1,194.76, and other personal effects and chattels in Cook County valued at $1,523. The inheritance tax appraiser appointed by the county court of Cook County, included in his appraisement of property all the property above mentioned. The county judge of Cook County, upon such report and appraisement, assessed and fixed the inheritance taxes to be paid by the beneficiaries under the will, at $1,423.25, and on April 26, 1907, the executrix paid to the county treasurer of Cook County, the sum of $1,352.09, being the taxes so fixed, less five per cent deducted, in accordance with the statute, on account of payment within six months after testator's death. Payment of this amount was made by check

—6 C C

and upon the check the words "paid under protest" were endorsed by the attorneys of the executrix. Subsequently the money so paid was turned over to the State treasury by the county treasurer of Cook County. From the order of the county judge fixing the taxes, an appeal was prayed by the executrix to the county court of Cook County, where after a hearing on May 17, 1909, the stocks and bonds of foreign corporations were held by that court not subject to an inheritance tax under the laws of this State.

The same court found that the taxes, on the remainder of the property included in the appraiser's report, should be $900, and ordered that the county treasurer refund to the executrix, the sum of $497.09, being the difference between the amount previously fixed by the county judge and the amount as finally fixed by the county court, less the discount in both cases. From this judgment of the county court of Cook County an appeal was taken by the People to the Supreme Court of Illinois, which said Court, on June 29, 1910, affirmed the judgment of the county court, as to the amount of inheritance tax to be paid by the beneficiaries in this estate, but reversed that part of the judgment ordering the repayment by the county treasurer of the said $497.09. (*People* v. *Griffith*, 245 Ill., 532.)

The construction of section 10 of the Inheritance Tax Act was involved in this cause. This section provides, that when any amount of the inheritance tax "shall have been paid erroneously to the State Treasurer, it shall be lawful for him, on satisfactory proof rendered to him by said county treasurer of said erroneous payments, to refund and pay to the executor, administrator or trustee, person or persons who have paid any such tax in error the amount of such tax so paid, provided, that all applications for repayment of said tax shall be made within two years from the date of said payment." In reference to this section, the Supreme Court held that it was not the intention of this section to authorize the county treas-

urer to repay taxes erroneously paid to him, but, that the State Treasurer, upon proper proof, was to refund such amounts. To secure such a refund of the said $497.09, now covered into the State treasury, is the object of the claimant in filing her claim in this Court.

It is a well established principle of law in Illinois, that there can be no recovery of back taxes, erroneously or illegally paid, unless the same were paid under actual duress or compulsion. *Yates* v. *Insurance Co.*, 200 Ill., 202, and cases cited.

Upon the check, by which payment of the taxes in question was made, the endorsement of the words "paid under protest" obviously did not amount to payment under duress or compulsion. Therefore, if recovery can be had in this cause, it must be had under section ten, above referred to, which section makes special provision for repayment in case of erroneous payments in the matter of an inheritance tax.

The difficulty encountered in this regard, however, is the requirement of said section ten, that application for repayment must be made within two years from the date of payment. In this case, payment was made to the county treasurer, April 26, 1907, and the two years' limitation therefor had run April 26, 1909. The evidence further shows, that neither during that period, nor afterward, was any application made to the State Treasurer for repayment, either by the county treasurer of Cook County, or the claimant, and the question therefore arises, whether claimant is barred of recovery in this cause by limitation.

Section ten, referred to above, is somewhat vague and uncertain as to the manner in which application for repayment is to be made, or as to the person by whom or to whom such application is to be made. As conditions precedent to repayment, two incidents are to concur: First, the county treasurer is to render to the State Treasurer satisfactory proof of the erroneous payment and, secondly, an application is to

be made for repayment, but whether application is to be made by the payer to the county treasurer, by the payer to the State Treasurer, or by the payer to the county treasurer and then by the county treasurer to the State Treasurer, is not at all evident from the context.

It would seem to be the most natural method, however, for the person who had erroneously paid the tax to the county treasurer, to apply for repayment to the very same officer to whom payment in the first instance was made, and that the county treasurer, who is presumed to have paid this erroneous tax to the State Treasurer, would thereupon make proof of the erroneous payment to said State Treasurer and the latter officer then make repayment.

Again, under section ten referred to, repayment is to be made by the State Treasurer upon satisfactory proof being made to him, by the county treasurer, of the erroneous payment. It is unlikely that the county treasurer would render such proof, unless application were first made to him for repayment by the party erroneously paying the tax, notice of the erroneous payment being thus brought to his attention, and it is not unreasonable to suppose that this is the application which is intended should be made within the two years period.

There is no definite direction in section ten as to this matter of application, and there is nothing in the section to indicate that the application is to be accompanied by any formality. In this case, at the time the tax was paid, claimant expressed protest by endorsing the same on the check. This protest was followed by an appeal by the claimant, from the order of the county judge, fixing this tax and by the time the county court rendered its opinion that part of the tax was illegal, the limitation had run. There was no laches or lack of diligence on the part of claimant. She was protesting against the payment all the time and was seeking relief from the same by the only legal remedy

at hand, following her remedy to the Supreme Court of the State. Her acts and conduct in the matter constituted a constructive application of the very strongest kind and was of a continuing character.

From all the facts in this case, it is the opinion of this Court, that not only as a matter of equity and justice is claimant entitled to an award, but such an award is also in conformity with law. Her claim for $497.09 is therefore hereby allowed.