First National Bank of Chicago, Trustee, Appellee, v. Abraham S. Hart and Maxine Hart Spitz, Appellants.

Gen. No. 42,102.

Heard in the third division of this court for the first district at the February term, 1942. Opinion filed June 24, 1942. Rehearing denied September 18, 1942.

ROSENTHAL, HAMILL, ELDRIDGE & KING, of Chicago, for appellants; LESSING ROSENTHAL and GEORGE W. GALE, both of Chicago, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellees; HERBERT A. FRIEDLICH and LOUIS A. KOHN, both of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court. This is an appeal by the defendants from a decree, entered in the circuit court of Cook county, decreeing

that the plaintiff, The First National Bank of Chicago, as trustee of the Max Hart Grandchildren's Trust, recover from each of the defendants (Abraham S. Hart and Maxine Hart Spitz) the sum of $14,864.47, together with 5 per cent interest from October 8, 1941. The question presented is whether under the provisions of the will of Rebecca Hart, the plaintiff is entitled to recover from defendants the difference between the inheritance tax nominally assessed against the interest represented by plaintiff and the larger tax nominally assessed against each of the defendants and disregarded by the surviving trustee under the Max Hart will in the distributions made by the trustee pursuant to the provisions of the Rebecca Hart will in the exercise of the power of appointment made by that will. This exercise was made by Rebecca Hart pursuant to the authority granted to her under the will of her husband, Max Hart.

On April 13, 1940, The First National Bank of Chicago as trustee of the Max Hart Grandchildren's Trust, created under section Eleventh of the will of Rebecca Hart, filed a complaint against the defendants, Abraham S. Hart and Maxine Hart Spitz, alleging that upon the distribution of the assets to which the plaintiff was entitled by virtue of the exercise of the power of appointment under the Rebecca Hart will, the plaintiff, as trustee of the Max Hart Grandchildren's Trust, should have received $23,306.66, more than was distributed to it; that in the distribution made to the defendants, each of them received $11,653.33 more than they were entitled to receive because of the erroneous allocation and charges made by the executors of the Max Hart will in discharging the liability accruing on account of Illinois inheritance taxes under that will. Defendants filed an answer, setting forth fully the facts in the case. No point was raised on the pleadings, and after the answer of defendants was filed, the cause, on motion of plaintiff, was set down for hearing upon the complaint and answer, and after

that hearing a decree was entered in favor of plaintiff.

The facts, as stated in the briefs filed in this appeal, appear to be that Max Hart died testate on February 22, 1928. His will was proved and admitted to record by the probate court of Cook county on May 22, 1928, and letters testamentary issued thereon to Rebecca Hart and Lessing Rosenthal, as executors thereof. Rebecca Hart, the widow of Max Hart, died on December 29, 1933, and after her death, Lessing Rosenthal continued as sole surviving executor of the Max Hart will.

Under section Fifth of the Max Hart will the testator, after a pecuniary gift to his wife, and the bequest to her of all his household goods, gave all of the rest, residue and remainder of his estate to three trustees and the survivors and survivor of them, to hold and invest and pay over the entire net income to his wife, Rebecca Hart, and after the death of his wife, to stand possessed of the trust estate and the income thereof in trust for all or such one or more ''exclusively of the others or other of my children or remoter issue born or to be born during the life of my said wife, or within twenty-one (21) years after her death, at such age or time, or respective ages or times, if more than one, in such shares, and with such future or executory or other trusts for the benefit of the said issue, or some or one of them, with such provisions for their respective advancement (either in the lifetime of my said wife or after her decease), maintenance, or education, at the discretion of the said trustees or trustee, or of any other persons or person and upon such conditions, with such restrictions and in such manner as my said wife shall, while she shall continue my widow, by deed, with or without power of revocation and new appointment, or in case she shall continue my widow until her death, by will or codicil appoint.''

In default of such appointment, the trustees were, after the death of the wife to stand possessed of the

trust estate and were to apply the income thereof for the maintenance, education and support of each child of the testator and the issue *per stirpes* of any child who may have died prior to such time until the youngest child of the testator living at the death of the wife attains the age of thirty years and at such time to divide and distribute the entire estate and property "then in their possession or under their control" among the testator's then living children and the then living issue of any child who may have died prior to such time, *per stirpes* and not *per capita,* that is to say, the then living issue of any child of the testator then deceased should together take the share which their parent would have taken if living.

Rebecca Hart, widow of Max Hart, never remarried, and after her death on December 29, 1933, her will, dated March 3, 1930, was proved and admitted to record in the probate court of Cook county on May 29, 1934.

By the Ninth section of her will, Rebecca Hart, pursuant to the powers conferred upon her by the Fifth section of the Max Hart will and in the exercise thereof provided and ordained that from and after her death the trustees or trustee of the trust estate, commonly referred to as the "Max Hart Residuary Trust" created by or existing under the Fifth section of the Max Hart will, should stand possessed of the trust estate and the income thereof, in trust, "for such of the children of the said Max Hart, deceased, as shall survive me and for the descendants living at my death of such child or children of the said Max Hart as may have died previous to my death or shall not survive me but shall have left or shall leave issue of such child or children living at my death, such children and descendants to take *per stirpes* and *not per capita* (that is to say, each child of the said Max Hart surviving me to take one share, and the descendants then living of each then deceased child of Max Hart together to take one share and only by representation), expressly subject, however," to the restrictions, provisions and trusts con-

tained in sections Tenth and Eleventh of her will.

By section Tenth of the will, the Max Hart Stock Trust is created and all the shares of Hart, Schaffner & Marx, which at the death of Rebecca Hart, may belong to the trustees of the Max Hart Residuary Trust, or in which they have any beneficial interest as such trustees, are transferred to three trustees under a special stock trust to hold until January 2, 1940, and to distribute at such time to the beneficiaries and persons designated and appointed by section Ninth of the will; the portion, however, distributable to any descendant of any deceased child of Max Hart, who may have died prior to the death of Rebecca Hart, to be transferred to the trustee of the Max Hart Grandchildren's Trust, created by section Eleventh of the will and to be received by the trustees as part of the principal or corpus of the trust.

By section Eleventh of the Rebecca Hart will, the portion or shares of the Max Hart Residuary Trust, appointed by section Ninth for the benefit of the descendants living at her death of any child of Max Hart who should not survive Rebecca Hart was to be transferred to the First Union Trust and Savings Bank as trustee to apply the net income to the extent requisite for the maintenance, education and support of the beneficiary, and the trustee was directed at (a) the expiration of twenty years from and after the death of the testatrix, or (b) the arrival prior thereto of the beneficiary at the age of thirty years, or (c) the death of such beneficiary prior to his attaining the age of thirty years and prior to the expiration of twenty years from and after the death of the testatrix, whichever of said three events should first happen, and designated by the testatrix as the "period of final distribution," the trustee is directed to transfer and convey all the property and estate held for such beneficiary (or the net proceeds thereof) to the person or respective persons entitled thereto under and pursuant to the provisions of the Rebecca Hart will.

The First Union Trust and Savings Bank appointed as trustee of the trust created by section Eleventh and called the "Max Hart Grandchildren's Trust" was consolidated with the First National Bank of Chicago, and the latter bank, pursuant to the provisions of the Rebecca Hart will, became the trustee of the Max Hart Grandchildren's Trust.

Under section Twelfth of the Rebecca Hart will, all the rest, residue and remainder of her property and estate was given to such of the children of her deceased husband, Max Hart, as should survive her and the descendants living at her death of such child or children of the said Max Hart as may have died previous to her death, or should not survive her, but shall have left or should leave issue of such child or children living at her death, each child of the said Max Hart surviving her to take one share, and "the descendants then living of each then deceased child of Max Hart together to take one share and only by representation."

The children of Max Hart surviving Rebecca Hart are (a) the defendant Abraham S. Hart and (b) the defendant Maxine Hart Spitz. One child of Max Hart, James M. Hart, died prior to the death of both Max Hart and Rebecca Hart, and left him surviving two children living at the death of Rebecca Hart, namely, James Max Hart, Jr., and Richard Foreman Hart. James Max Hart, Jr., attained the age of twenty-one years on September 9, 1940. Richard Foreman Hart will be twenty-one years of age on March 17, 1942.

In the Illinois inheritance tax proceedings, the following net tax (after deducting the discount allowed) was assessed upon the successions of the following persons in the amounts set forth, namely;

Rebecca Hart (the widow of Max Hart)..$242,674.73

Rebecca Hart and Lessing Rosenthal, as Trustees, for the use and benefit of James Max Hart, Jr., the grandson of Max Hart............$36,348.41

Rebecca Hart and Lessing
Rosenthal, as Trustees, for
the use and benefit of Rich-
ard Foreman Hart........ 36,348.41

Making a total of...................... 72,696.82
Abraham S. Hart, son of Max Hart...... 107,656.81
Maxine Hart Spitz, daughter of Max Hart. 107,656.81
Making the total amount of the net tax...$530,685.17

The entire tax was paid out of the funds of the estate of Max Hart by Rebecca Hart and Lessing Rosenthal, as executors of the Max Hart will, and charged to the corpus of the estate. In paying the tax, the executors of the Max Hart will made no specific or express charge against any interest.

Upon the distribution of the trust estate, the surviving trustee of the Max Hart Residuary Trust made equal distributions between (a) the defendant Abraham S. Hart, (b) the defendant Maxine Hart Spitz, and (c) the plaintiff the First National Bank of Chicago, as trustee of the Max Hart Grandchildren's Trust.

Passing to the question of the federal estate tax credit the following computations are pertinent:—

The total Federal estate tax assessed
against the estate of Max Hart
was ............................$647,810.73

Pursuant to the Federal Statute there
was allowed as a credit on this sum
the amount of the Illinois inherit-
ance taxes paid, to the extent of
80% of the amount of the Federal
estate tax, namely................... 518,248.58

Leaving a balance of Federal estate
taxes to be paid of..................$129,562.15

This balance was paid.

On the basis of the foregoing facts, the defendants contend that the interest of the various residuary beneficiaries in the Max Hart Residuary Trust was determined at the death of Rebecca Hart through the exercise

by her of the power of appointment granted to her by the will of her husband; and that that interest could only be determined upon the death of Rebecca Hart, and not before; and that it is clear that under the terms of the Rebecca Hart will the distribution was to be equal as between the three branches, that is to say, each child of Max Hart, living at the death of Rebecca Hart, was to have one share and the descendants together of the deceased child of Max Hart, were to have one share. That there was to be no discrimination, and was to be equal distribution between the issue of Max Hart, the children of any deceased child together representing the parent.

The plaintiff illustrates the consequence of the distribution made by the surviving trustee by the following chart:

| Residuary Legatee | Net tax assessed against legacy | Amount deducted from legacy |
|---|---|---|
| Grandchildren's Trust | $ 72,696.82 | $ 96,003.48 |
| Abraham S. Hart | 107,656.81 | 96,003.48 |
| Maxine Hart Spitz | 107,656.81 | 96,003.48 |
| | $288,010.44 | $288,010.44 |

Thus, $23,306.66 was deducted from the grandchildren's shares to pay taxes assessed against the defendants. We are in agreement with the suggestion offered by plaintiff that under the Illinois Inheritance Tax Act each beneficiary must pay the tax assessed against his gift. In *People v. Varel,* 351 Ill. 96, the Supreme Court stated that "An inheritance tax is a tax upon the right to succeed to property. It should be assessed only on the beneficial interest passing to the heir, devisee or legatee from the decedent, . . ." And again in *People v. Estate of Strom,* 363 Ill. 241, it is stated: ". . . It is the right to receive the property by descent or devise which the state taxes. The estate itself is not taxed. . . ." Then in the case of *People v. Union Trust Co.,* 255 Ill.

168, the court said; ''. . . It was the intention of the legislature in this State that a person should be taxed only on the beneficial interest which he receives. It is not a tax on the estate but on the right to receive a portion of the estate. Such is the law generally. . . .'' The fact that the lien of the tax in favor of the state is ''limited to the property chargeable therewith,'' and does not extend to the whole estate (section 24, Cahill's Ill. Rev. Stat. (1927), ch. 120, par. 418) clearly indicates the nature of the tax. Applying the applicable rules to the present case, we find that the Illinois inheritance tax is a tax upon the right of succession, and further, that the estate itself is not taxed; and that the tax is upon the right to receive a portion of the estate.

On the question of when the inheritance tax is to be deducted, section 4 of the Illinois Inheritance Tax Act (Cahill's Ill. Rev. Stat. (1927), ch. 120, par. 399) provides:

''Any administrator, executor or trustee having any charge or trust in legacies or property for distribution subject to the said tax shall deduct the tax therefrom, or if the legacy or property be not money he shall collect a tax thereon upon the appraised value thereof from the legatee or person entitled to such property, and he shall not deliver or be compelled to deliver any specific legacy or property subject to tax to any person until he shall have collected the tax thereon; . . .'' Therefore, the tax assessed against each gift must be deducted therefrom before distribution, and the tax on one gift cannot be deducted from another gift to another beneficiary. As stated in *People v. Union Trust Co.*, 255 Ill. 168;

''Under our law the administrator or executor or trustee cannot retain out of the property that comes into his hands, as a gross amount, the entire sum of the inheritance taxes imposed. That law intended that a person should be taxed only on the beneficial interest that he received, (*People v. Nelms, supra,*) and the admin-

istrator or executor can only retain from any legacy the inheritance tax due on that legacy.''

Therefore, it would appear from the suggestions and authorities offered that the tax assessed should have been deducted from the gift of each person, and that the sum of $23,306.66 was improperly deducted from the grandchildren's shares and applied to inheritance taxes assessed against defendants' shares. Such deduction was not in accordance with the statute and cases cited. The share of each beneficiary must pay its own tax. Here, the trustee divided the residue in shares (which were subject to different rates of tax) and made distribution in three equal parts, one to each of the two defendants and one to the plaintiff as trustee for the benefit of the two grandchildren. Thus, each share did not pay its own tax, but rather the defendants' shares were added to, to the extent of $23,306.66, at the expense of the share of the grandchildren (who had the lower tax rate).

We might add that section Fourth of the Max Hart will provides that certain specified bequests and legacies ''in the preceding sections of this my will given'' should be received free of inheritance taxes and that the taxes assessed against such gifts be paid out of the residue or general estate as expenses of administration. It is to be noted that the application of this section is limited to taxes on gifts given in ''preceding sections''; the clause disposing of the residue (section Fifth) did not precede this section but followed it. Section Seventh of the Rebecca Hart will is in similar language. It too provides that specific gifts given in ''preceding sections'' of the will be given undiminished by inheritance taxes, and that the taxes assessed against such gifts be charged to the general estate. The clauses exercising the power of appointment over the Max Hart residue (section Ninth) and disposing of the residue of the testatrix' own estate (section Twelfth) follow this section Seventh. It would thus seem apparent that both de-

cedents were aware of the rule that every gift normally bears its own inheritance tax. Each expressly directed that the rule should not apply to certain nonresiduary gifts, but said nothing whatever about residuary gifts; and the conclusion is inescapable that both decedents, while desiring that the nonresiduary gifts should be paid free of tax, intended that each residuary gift should bear the inheritance tax assessed against it.

Defendants attempt to apply the maxim that equality is equity, and insist that the three "Stirps" of Max Hart should therefore assume an equal portion of the total residuary tax burden, even though the grandchildren's taxes were smaller than defendant's taxes. The reply made by plaintiff is that the "stirps" are not the beneficiaries here; that the taxes were assessed, not against the *"stirps,"* but against the individual legatees, and it was to these individuals, not to the *"Stirps"* that the residue was appointed; and that on the contrary, the share of each defendant was twice as large as that of either grandchild, thus rendering the maxim totally inapplicable.

It is the further contention of defendants that there is no connection between the tax assessed against them and the shares ultimately received by them. They point out that the tax assessment preceded the exercise of the power of appointment and imply from this that plaintiff cannot now complain of the diversion in question. The fact remains, however, that the residue was appointed to the same persons and in the same proportions as contemplated by the tax assessment. Each defendant was taxed on one third of the residue and each in fact succeeded to one third of the residue; each should, therefore, pay the tax on what he or she received. Considering equitable maxims, they must be considered in the light that plaintiff ought not to be required to pay more than the tax legally assessed against the shares of the grandchildren. Assuming for purposes of illustration that the physical assets of the Max Hart residuary trust

estate had a value at the date of Rebecca Hart's death of $3,000,000, the total residuary estate, divisible among the four beneficiaries, would be as follows:

| | |
|---|---:|
| Physical assets | $3,000,000.00 |
| Claim against Abraham S. Hart | 107,656.81 |
| Claim against Maxine Hart Spitz | 107,656.81 |
| Claim against James Max Hart, Jr. | 36,348.41 |
| Claim against Richard Foreman Hart | 36,348.41 |
| Total | $3,288,010.44 |

Plaintiff's contention, as above suggested, as to the division and charges which should have been made is that one third of the total residuary estate, pursuant to Rebecca Hart's appointment, would in the first instance be distributable to Abraham S. Hart, or $1,096,003.48; one third thereof or $1,096,003.48 to Maxine Hart Spitz; and one third thereof or $1,096,003.48 to plaintiff, as trustee for the grandchildren. That the trustee of the Max Hart Residuary Trust was entitled to deduct however under section 4 of the act above quoted, the inheritance taxes previously paid on behalf of each of the distributees. Thus, it is urged, there should have been deducted from each of the defendants' shares as computed above the sum of $107,656.81, and from the share of the grandchildren the sum of $72,696.82, and adjustments made accordingly. The resulting distribution to plaintiff as trustee for the grandchildren would thereby exceed the distribution to each of the defendants herein by the sum of $23,306.66, and to that extent, we agree that the defendants have been enriched at the expense of the grandchildren. From these computations it appears that there should have been added the sum of $23,306.66 to the amount which was distributed to the plaintiff as trustee under the Max Hart Grandchildren's Trust.

There are further suggestions offered along the line of computations, but we have reached the conclusion that the court justly decreed that the defendants have been unjustly enriched by the amounts which they have

improperly received and retained at the expense and to the detriment of the Max Hart Grandchildren's Trust, as a result of the erroneous allocation of the burden of inheritance taxes; and that in equity and good conscience defendants should account therefor to plaintiff. The decree will, therefore, be affirmed.

*Decree affirmed.*

BURKE, P. J., and KILEY, J., concur.